George F. X. McInerney, J.
Judgment convicting the defendant of violating subdivision (1) of section 314 of the Conservation Law is reversed, the information is dismissed, and the fine is remitted.
*155 The delectable bivalve, venus mercenaria, beloved of the gourmet, paragon of taciturnity and reputed possessor of magic powers unfortunately mythical, herein is wrested from its watery haunts to confront in silent challenge the constitutional safeguards against unreasonable search and seizure.
Two conservation officers were the only witnesses at the trial of the defendant. One testified that he “ was checking clam boats ” on the day in question, that he observed about 10 clam boats in a certain area of the Great South Bay of approximately 12 to 15 square miles; that he boarded about 5 of the boats that day to inspect them for clams of illegal size; that he had seen the defendant using clam tongs when he first noticed him working; that he was not watching the defendant in particular; that he subsequently boarded the defendant’s boat without asking permission; that he looked into the hold of the boat without permission ; that he found two containers of undersized clams in the hold which together totalled about one bushel and two other bushels of legal size clams.
He further stated he knew that a considerable number of undersized clams had been taken from the area from observations and complaints he had received through the Oakdale regional office. He had boarded other boats two days earlier and had found large quantities of undersized clams on them. He also stated that he had no knowledge prior to the boarding of the boat that the defendant was trafficking in undersized clams and that he boarded the boat to inspect it and check for the defendant’s shellfish digger’s permit. No summon a was issued for violation of law to the defendant until some days later, and finally, he did not check the defendant’s clamming license until after seizure of the undersized clams.
The second officer testified that he observed the defendant’s boat in a small area where he had been informed the seed clams were quite thick; that he boarded the defendant’s boat and asked for his license which the defendant produced; that he noticed a few small clams, “5 or 6 ”, on the right-hand deck; that forward of the cabin there was an open hold in which after he walked forward he could see more clams; that examination revealed both the undersized and legal clams above mentioned.
The officer stated that he walked forward “ while waiting for him ” to produce the license. He finally stated that one of the containers “to him seemed to contain small clams ” because ‘ ‘ from looking at the container the bulges looked small Upon being questioned as to the reason he had to believe the defendant had undersized clams aboard, the answer was that “ he was in the area ”.
*156 The People rely upon the provisions of section 380 (subd. [4], par. [b]) of the New York State Conservation Law which gives the conservation officers the right “ To search without search warrant any boat or vehicle of any kind * * * or any container of any natiire * * * whenever they have cause to believe that any provision of this article or of any law for the protection of * * * shellfish * * * has been or is being violated ”.
The defendant asserts that this section in the absence of a requirement for an arrest is in violation of the Fourth and Fifth Amendments of the Constitution of the United States and the Constitution of the State of New York (art. I, § 12) and that in any event the officer must have reasonable cause to believe that the law is being violated.
The court in Mapp v. Ohio (367 U. S. 643) stated that all evidence obtained by searches in violation of the Constitution is, by the same authority inadmissible in the State court. Our own New York Constitution (art. I, § 12) indicates that evidence which is obtained as a result of “ unreasonable ” search and seizure may not be admitted into evidence. An exhaustive and illuminating discussion of this broad topic may be found in ‘1 The Pleader, A Comment on the Law of Search and Seizure ” by Judge Nathan E. Sobel, published by the Kings County Criminal Bar Association. In this article the author takes the view that the Fourth Amendment in conjunction with the Fifth Amendment of the. United States Constitution makes it obligatory on the States1 to have “ probable ” cause written into any of their statutes on searches and seizures and if they fail to do so such statutes would be violative of due process as required by the Fourteenth Amendment to the United States Constitution.
Section 8 of the Civil Eights Law follows the wording of both the Federal and State constitutional provisions. Although section 380 (subd. [4], par. [b]) of the Conservation Law used the expression ‘1 cause to believe ’ ’, even the prosecution concedes that this expression must be modified by the word “ probable ”.
u Probable cause ” has been defined as follows: “ ‘ If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient. ’ ’ ’ (People v. Hill, 131 Misc. 521, 523.) The court in this case further went on to state that general searches are unlawful and all unlawful searches are unreasonable.
The People meet the defense’s contention by maintaining that the fact that the officers watched the defendant dig for 45 min *157 utes in the area where they knew that undersized clams could be found was sufficient probable cause to believe that section 314 of the Conservation Law was being violated. Even assuming that the officers had probable cause to arrest the defendant for a misdemeanor committed in their presence, the fact is that no arrest was made prior to the search, and consequently the search was illegal, since it does not fall into any of the three approved categories.
“ The Fourth Amendment, as noted, condemns only those searches and seizures which are unreasonable (Harris v. United States, 331 U. S. 145, 150). A search is reasonable if conducted pursuant to a legal search warrant, by consent, or incident to a lawful arrest.” (People v. Loria, 10 N Y 2d 368, 373.)
“ In People v. Loria (supra) we stated the rule to be that a search is reasonable if conducted pursuant to a lawful search warrant, by consent, or incident to a lawful arrest.” (People v. O’Neill, 11 N Y 2d 148, 152.)
‘ ‘ In each case the arresting officer acted without benefit of a search or arrest warrant, and unless the search be found to be incident to a lawful arrest, it would be illegal (Johnson v. United States, 333 U. S. 10, 15; People v. Loria, 10 N Y 2d 368, 373).” (People v. Caliente, 12 N Y 2d 89, 93-94.)
A search without a warrant must be incidental to a lawful arrest. (Johnson v. United States, 333 U. S. 10; United States v. Rabinowitz, 339 U. S. 56; People v. Moore, 11 N Y 2d 271; People v. Battle, 12 N Y 2d 866; People v. Piazza, 15 A D 2d 503; People v. Brown, 32 Misc 2d 846; People v. Cassone, 35 Misc 2d 699; Current Problems of the Law of Search and Seizure, Justice Nathan R. Sobel, N. Y. L. J., Oct. 28 — Nov. 4, 1963.)
There is still the bothersome issue raised by the testimony of one officer that he saw 5 or 6 small clams on the deck of the boat. Were these clams contraband per se the court would be faced with a different question since open contraband may be seized without violation of the constitutional safeguards against unreasonable searches. (Abel v. United States, 362 U. S. 217; Hester v. United States, 265 U. S. 57, 58; United States v. Jankowski, 28 F. 2d 800; People v. Manzi, 38 Misc 2d 114.)
However, subdivision (6) of section 314 provides that undersized clams may compose an amount not to exceed 3% of the total catch when unavoidably taken.
Thus the defendant was not in violation of the section merely by his possession of 5 or 6 undersized clams although the suspicions of the officer were aroused and shortly thereafter confirmed. Searches cannot be made on general suspicions and *158 then justified by the results. (Byars v. United States, 273 U. S. 28; People v. Loria, 10 N Y 2d 368, supra.) If this works a hardship on the eoiiservation officers, it is no more than the often frustrating limitations imposed by constitutional safeguards upon narcotics agents and police officers in general. The Federal and State Constitutions have in effect stated that under such conditions the effectiveness of the law enforcer must be handicapped by the protections guaranteed to the individual.