Woodrow Sneed, Plaintiff-in-Error,

*v.*

State of Tennessee, Defendant-in-Error.

423 S.W.2d 857.

(*Knoxville,* September Term, 1967.)

Opinion filed January 8, 1968.

THOMAS F. GUTHRIE and WILLIAM G. McPHEETERS, Dayton, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and LANCE D. EVANS, Assistant Attorney General, Nashville, for defendant in error; and HARRY C. TEMPLETON, District Attorney General, Winchester, prosecuted the case in the trial court.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Woodrow Sneed, John Loyd Rector, Jr., and Jackie M. West were indicted by the Rhea County Grand Jury for armed robbery. Rector and West pleaded guilty, but Sneed pleaded not guilty. Represented by retained counsel he was then tried, convicted of armed robbery, and sentenced to serve ten years and one day in the State Penitentiary. Upon his affidavit of indigency he was furnished with a bill of exceptions and court appointed

counsel for this appeal; the same counsel he had retained for his trial.

Sneed has appealed to this Court assigning a number of errors which make the points:

1. That the Court should not have allowed evidence to be introduced with respect to a rifle, identified by the proof as having been used by Sneed in the course of the robbery, because it came into the possession of the State by an unconstitutional search and seizure;

2. Because the circumstances of the arraignment of the three defendants and the acceptance of the plea of guilty of Sneed's co-defendants jeopardized Sneed's constitutional rights without need or justification;

3. That the Court should have ordered a severance of Sneed's case from that of the other two defendants;

4. That the court should have required the State to furnish a copy of the psychiatric report on Sneed, made after he had been observed and examined at Central State Hospital over a period of several weeks;

5. That the court erred in not requiring the district attorney-general to furnish counsel copies of statements made by defendant and co-defendents when they were interviewed by officers in the local jail; or to require them to present the names of the persons who were present, a sufficient time before trial to allow Sneed to prepare his case;

6. That there is no evidence of Sneed's guilt, and such as there is preponderates in his favor.

The only evidence in the case is that introduced by the State, and it is to the effect that on the early morning of

November 16, 1965, Sneed, along with Johnny Rector, entered the Dayton Truck Stop, a restaurant, located near Dayton, in Rhea County, Tennessee. Sneed was armed with a pump rifle and Rector had a sawed-off shotgun. They were positively identified by Mrs. Arvie Sexton, who had no doubt as to their identity, and was unshaken in regard thereto by cross-examination. Immediately upon entering, Sneed and Rector pointed their guns at those present and ordered them to lie down on the floor. All complied except Mrs. Sexton, who was ordered by Sneed to open the cash register, from which he removed all of the paper currency, amounting to approximately $35.00. While Sneed was arguing with Mrs. Sexton about opening other drawers of the cash register, which she could not open, a Mr. Harris and a Mr. Ballard drove up in front of the truck stop. Rector went out the front door, holding his shotgun at a ready position so as to warn off or intimidate Harris and Ballard, while Sneed, noticing Rector's absence and the presence of the parties mentioned at the front of the restaurant, went into the kitchen, broke out a window, and escaped. While Sneed and Rector were in the restaurant, both fired their weapons; one, evidently Rector, shooting the telephone off the wall, and the other, Sneed, firing his gun so as to leave several bullet holes and spent cartridge cases on the floor.

West's involvement in the crime was that he drove the car in which Rector left the scene.

On November 18, after warrants had been sworn out for the three parties, Ballard, who identified himself as police commissioner of Dayton, and Flinton Travis (evidently a police officer), were notified by radio that Sneed was at a local hospital. They went there, but were unable

to apprehend him. While there, Ballard, who had the number of Sneed's car and knew the kind of car he was driving, saw it sitting in front of the hospital. At that time they had a warrant for Sneed's arrest. The car was parked in front of the hospital in an area provided for public parking. Ballard looked in the car to see if anybody was in it. When he looked in, he was standing outside of the car, beside it, and he saw a pump rifle. The car door on the opposite side was open, so Ballard opened the door on his side and took possession of the rifle, which he turned over to one Ed Walker, a T.B.I. agent, after taking the rifle's serial number.

The rifle, together with several discharged .22 caliber cartridge hulls, picked up in the restaurant immediately after the robbery and the shooting, were turned over to the Tennessee Bureau of Investigation.

Ballard testified that the man he observed in the restaurant with the .22 rifle was the same size and build as Sneed; and, that while he could not identify the rifle he removed from Sneed's car as being the rifle in the hands of the party he saw in the restaurant, the rifle was about the same length and like that rifle in the sense that most rifles of that kind are about the same length and size.

A Tennessee Bureau of Investigation agent, whose expert qualifications were conceded by the defense, positively identified the spent .22 cartridge hulls picked up in the restaurant as having been fired from the rifle removed by Ballard from Sneed's car.

■ As to all of the assignments going to the evidence. and its sufficiency, these are overruled as it is obvious from our recitation of the facts that there is sufficient evidence of Sneed's guilt to sustain the conviction.

The strongest argument of the defense on the evidence is that the court should not have allowed the rifle to be introduced in evidence as it was gotten by an illegal search and seizure in violation of Sneed's constitutional rights. The argument is, under the authority of *Blankenship v. State,* 219 Tenn. 355, 410 S.W.2d 159 (1966), that it would be impossible for this Court to say the evidence with respect to the rifle was not taken into consideration by the jury in reaching a verdict, and so the verdict cannot be sustained under the harmless error statute.

The State, on authority of *Bromley v. State,* 203 Tenn. 194, 310 S.W.2d 432; and *Ellis v. State,* 211 Tenn. 321, 364 S.W.2d 925, concedes the removal of the rifle from defendant's car was the result of an illegal search, but argues that there is enough evidence without the rifle evidence to sustain the conviction.

If we were to agree with the State that the search and the obtaining of the rifle thereby was illegal, we would have to reverse the case and remand it for a new trial. As, certainly, the rifle evidence was some of the strongest evidence of Sneed's guilt introduced at the trial.

However, we are compelled to disagree with the State's position. *Bromley v. State* and *Ellis v. State* do not require such a holding on our part. The distinctive difference is that in those cases the illegal evidence was discovered by a search, (in Bromley, the premises; in Ellis an automobile), while in this case there was no search, the evidence being plainly visible to Ballard, when he walked up to Sneed's car and looked in it. While Bromley and Ellis are like this case in that the discovery of evidence was not coincidental with the arrest, there the likeness ends.

This case comes within the many times recognized rule that constitutional rights are not violated when a law officer, without any trespass against a defendant, and while he is at a place where he has a right to be, looks and sees evidence against a defendant which is plainly visible.

██ Since guarantees of the Fourth Amendment of the Federal Constitution against unreasonable searches and seizures now apply to states through the due process clause, (*Mapp v. Ohio,* (1961), 81 S.Ct. 1684, 367 U.S. 643, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, rehearing denied 82 S.Ct. 23, 368 U.S. 871, 7 L.Ed.2d 72), and this is the supervening law of the land, federal cases on search and seizure must be abided by. And as our own constitutional provision, Article 1, sec. 7, is identical in intent and purpose with the Fourth Amendment, it is reasonable that we should not limit it more stringently than federal cases limit the Fourth Amendment, and so should regard such cases as particularly persuasive.

In *United States v. Williams,* 6 Cir., 314 F.2d 795, it was held that no search is involved in the discovery of evidence, when the evidence is in plain and open view in a public place. In *United States v. Cook,* D.C., 213 F. Supp. 568, it was stated that a ''search'' implies invasion and quest, and this in turn implies some kind of actual or constructive force, much or little. A ''search'' was similarly defined in *Lester v. State,* 216 Tenn. 615, 393 S.W.2d 288, where it was said that a search, in a constitutional sense, means searches and seizures by examination of a man's home, buildings, premises, his person or what not, with view to discovery of contraband, illicit stolen property, or some evidence of guilt to be used in prosecution against; and implies invasion and quest

which in turn implies force, actual or constructive, much or little.

In *United States v. McDaniel,* D.C., 154 F.Supp. 1, it was said that a contraband article or an article which is needed by police that is visible without a search, need not be left by the officers, who are "not [required to] walk out and leave the article where they saw it". In *Fagundes v. United States,* C.A.Mass. 1965, 340 F.2d 673, it was said that no search was involved in seeing what was patent and obvious in daylight, or even in artificial light. Other cases are: *Miller v. United States,* (6 Cir., 1966) 356 F.2d 63, certiorari denied 86 S.Ct. 1357, 384 U.S. 912, 16 L.Ed. 365; *Chapman v. United States,* 9 Cir., 1965, 346 F.2d 383, certiorari denied 86 S.Ct. 249, 382 U.S. 909, 15 L.Ed.2d 161.

State cases to the same effect are: *People v. Holloway,* (1964) 230 Cal.App.2d 834, 41 Cal.Rptr. 325; *People v. Buys,* 42 Misc.2d 154, 246 N.Y.S.2d 925; *State v. Polton,* Iowa, (1966), 143 N.W.2d 307; *State v. Clifford,* (1966), 273 Minn. 249, 141 N.W.2d 124; *State v. Allred,* (1964), 16 Utah 2d 41, 395 P.2d 535.

Cases holding that the taking of an article of contraband or evidence is not an unconstitutional seizure where it comes to attention in a manner that does not violate a defendant's constitutional rights are: *State v. Chinn,* (1962), 231 Or. 259, 373 P.2d 392; and *State v. Baines,* Mo., (1965), 394 S.W.2d 312.

On the facts, and on the law cited, we overrule the assignment of error going to the invalidity of the evidence relating to the rifle.

The other assignments of error are without merit.

■ As to the complaint about the report from Central State Hospital on defendant's mental condition: according to the bill of exceptions this report was at one time in the court file, and from what is said there it was evidently examined prior to trial by defendant's retained counsel. In any event, no question concerning the absence of the report from the file was raised until after the trial of the case had commenced. And then the only request was that the report be restored to the file. This request was not pressed after the attorney general suggested the report would only become material if the defendant were to take the witness stand, and needed it in his defense. But the defendant, as he had a right to do, did not testify. Nor was any defense, based on his mental condition, made. Nor was the report mentioned again during the trial.

On the motion for a new trial, no particular effort was made to have the report placed in the record, so that this Court might discover therefrom whether it was material in any way to the defense, so we might protect Sneed's rights on this account.

Finally, T.C.A. sec. 33-701(b), expressly requires the superintendent of a mental hospital in which one charged with a crime is hospitalized, to keep him there and examine him every six months if he is not mentally competent to stand trial. Otherwise, to return him to the court which ordered his hospitalization, for disposition of his case. Since the superintendent of Central State Hospital, to which defendant was committed, did return him for trial, we must, and do, assume he was found competent to stand trial.

Another assignment, which we think is without merit, is that defendant was not furnished a list of statements

made by the other two defendants and the names of persons present at the time the statements were made.

■ So far as appears from the bill of exceptions, which must control this appellate hearing, no statements were made by the other two defendants; no statements were introduced in evidence against defendant; nor was there any motion to the court by defendant's counsel with regard to this subject. So there is nothing in this assignment.

We cannot sustain the contention the conviction should be reversed because the three defendants, all of whom were being brought to trial on a single indictment, were arraigned in court where the jury panel was present, and two defendants were allowed to plead guilty, and the court did not order a severance in the case.

■ There is nothing in the bill of exceptions, nor in the record as supplied on a suggestion of a diminution of the record, with respect to this matter. This Court can only take notice of matters of fact preserved by bill of exceptions, and contained in the record sent to us for review.

■ It is said in Sneed's brief that the court was in error in, "allowing attorneys, co-defendants, their relatives and spectators to repeat and comment on the conflicting pleas within the hearing of the jury". There is nothing about this in the bill of exceptions, so we cannot act on this complaint.

■ The assignment based on the failure of the trial judge to order a severance is not good. No motion for severance was made. Certainly, the trial judge could not be expected to order a severance on his own motion, unless it appeared this was necessary to a fair trial. If the

defendant wanted a severance he should have moved for it. It being the settled rule that the matter of a severance rests in the sound discretion of the trial judge, even where there is a motion, *Essary v. State,* 210 Tenn. 220, 357 S.W.2d 342, the trial court cannot be put in error where there is no such motion; and, as in this case, no showing of denial of a fair trial. *Monts v. State,* 214 Tenn. 171, 379 S.W.2d 34.

Upon a consideration of the entire record, we are satisfied defendant has presented no error on which this Court would be warranted in setting aside the judgment of the lower court, so it is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.