# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 23, 2002 Session

## STATE OF TENNESSEE v. ALFRED FREDDIE WILCOX

**Appeal from the Criminal Court for Washington County**
**No. 26427      Robert E. Cupp, Judge**

---

### No. E2001-00602-CCA-R3-CD   Filed April 9, 2002

---

The state appeals from the Washington County Criminal Court's granting of the defendant's motion to suppress evidence that was obtained pursuant to a traffic stop. The state contends that contrary to the trial court's finding, the arresting officer had reasonable suspicion to justify stopping the defendant. We agree and reverse the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steven R. Finney, Assistant District Attorney General, for the appellant, State of Tennessee.

A. Scott Pratt, Johnson City, Tennessee, for the appellee, Alfred Freddie Wilcox.

#### OPINION

This case relates to the defendant's, Alfred Freddie Wilcox, being stopped for driving under the influence of an intoxicant (DUI). During the suppression hearing, Officer James Brown of the Johnson City Police Department testified that about midnight on July 15, 2000, his patrol car was parked in the emergency lane of southbound Interstate 181. He said that he was sitting in the car and that he was running radar. He said that he looked in his rearview mirror and saw the defendant's truck approaching his police car from behind. He said that half of the defendant's truck was in the emergency lane and that the other half of the truck was in the right-hand lane of the interstate. He said that he tried to put his police car into drive to move out of the defendant's way but that the defendant veered out of the emergency lane and back into the southbound lane. He said that he thought the defendant almost hit him.

Officer Brown testified that he pulled out of the emergency lane and caught up with the defendant. He said that he did not stop the defendant right away because he thought the defendant might have been changing the radio station. He said that he followed the defendant "to see if in fact that was the situation this time or if it might be something more." He said that the defendant took an exit ramp and again ran off the road once or twice. He said that the defendant went to the bottom of the ramp and turned onto North State of Franklin Road. He said that the defendant's car was swaying in its lane and that he turned on his in-car camera system. He said that he and the defendant stopped for a traffic light and that when the defendant pulled away from the light, the defendant's car continued to weave. He said that the defendant's car never crossed completely into another lane of traffic but that it drifted back and forth within its lane. He said that based on everything he had seen, he decided to stop the defendant. He said that he turned on his emergency lights and that the defendant pulled into a church parking lot.

On cross-examination, Officer Brown said that after he saw the defendant in his rearview mirror, he turned to his right and looked behind him. He said that after the defendant turned onto North State of Franklin Road, he did not notice if another car was in front of the defendant's car. He acknowledged that the defendant did not break any other traffic laws. He said that when he activated his emergency lights, the defendant gave a turn signal and turned into the church parking lot.

The trial court viewed the videotape of the defendant's driving on North State of Franklin Road. After watching the tape, it noted that the defendant broke no traffic laws, drove safely behind the car in front of him, and never swerved suddenly. The trial court determined that during the three minutes in which Officer Brown followed the defendant, the defendant's car touched the line on the right side of its lane four times and the line on the left side of its lane once. It decided that the defendant's weaving was not pronounced or significant. Although the trial court believed Officer Brown's testimony that the defendant drove into the interstate's emergency lane, the trial court gave it little weight and held that under the totality of the circumstances, Officer Brown did not have reasonable and articulate suspicion to justify stopping the defendant.

The state contends that the trial court erred in concluding that the totality of the circumstances did not give Officer Brown reasonable suspicion for the stop. It contends that Officer Brown's testimony that the defendant drove into the emergency lane and then ran off the road once or twice more as the defendant exited the interstate is evidence that the defendant committed dangerous traffic violations that justified the defendant's stop. The state also contends that the trial court improperly ignored Officer Brown's testimony and relied solely on the videotape. The defendant argues that the trial court properly granted his motion to suppress. We believe that the trial court erred in granting the defendant's motion.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Furthermore, questions of the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence

are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. When a trial court bases its findings of fact on evidence that does not involve an issue of credibility, such as a videotape, this court may review that evidence de novo. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). An automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pully, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that an occupant is violating or is about to violate the law. See United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2574, 2580 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court must consider the totality of the circumstances--the entire picture." State v. Moore, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989).

Officer Brown testified that the defendant was in the emergency lane on Interstate 181 and that the defendant nearly struck his vehicle. The trial court, accrediting the officer's testimony that the defendant drove into the emergency lane, stated,

> The only thing that the State would have to hang its hat on outside of that film was this officer's testimony that when he looked in his rearview mirror that this truck was at his rear. I, for one, and this doesn't mean anything, have been guilty of that very thing. I have been on an interstate. I have been fooling with stuff because I get bored driving interstates . . . . But I have found myself occasionally drifting to that parking lane, and unfortunately a vehicle would be sitting there and I would have to jerk the vehicle back. That doesn't mean I was intoxicated. It means that I was not paying attention like I should.

We agree that inattentiveness can result in a vehicle's drifting onto the shoulder of a road. Furthermore, we note that such drifting does not necessarily violate any traffic law. See Tenn. Code Ann. § 55-8-123(1) (providing that on a multiple-lane road, a "vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety"); State v. Ann Elizabeth Martin, No. E1999-01361-CCA-R3-CD, Hamilton County, slip op. at 7 (Tenn Crim. App. Sept. 8, 2000) (holding that "a vehicle that briefly crosses the solid white line on the shoulder is [not] committing

a traffic violation"); see United States v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000) (holding that "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time [is not] a failure to keep the vehicle within a single lane 'as nearly as practicable'"). However, an officer need not ignore such an event in assessing the driver's subsequent movements, and Officer Brown's testimony indicates that the defendant's truck was in the emergency lane for more than "a few feet and an instant in time."

In light of the totality of the circumstances, we believe that Officer Brown had reasonable suspicion to stop the defendant. Although the trial court relied heavily on the facts in State v. Binette, 33 S.W.3d 215 (Tenn. 2000), for its analysis, we note several differences in the facts of this case and Binette. In Binette, a police officer videotaped the defendant driving from side to side within the defendant's lane. The officer stopped the defendant and ultimately arrested him for DUI. The defendant argued that the officer did not have reasonable suspicion to stop him. The officer did not testify at the defendant's suppression hearing, and the trial court had to rely on the videotape of the stop. The trial court found that the defendant was "weaving" within his lane and that this weaving created reasonable suspicion for the officer to stop the defendant. The supreme court disagreed, holding that the mere weaving within his lane did not create reasonable suspicion for the stop.

Unlike in Binette, the defendant in this case was traveling on a well-lighted and fairly straight road, not a winding road. In addition, although the supreme court characterized Binette's driving as occasionally drifting from the center of the lane, we have viewed the videotape in this case and believe that it shows the defendant repeatedly drifting back and forth between and on the lines marking his lane. Moreover, we believe that, ultimately, the video shows the defendant weaving, i.e., veering from side to side at a faster pace than when he drifted. Finally, unlike in Binette, the arresting officer in this case testified as to the defendant's driving within the interstate emergency lane and weaving on North State of Franklin Road. Based on our de novo review of the trial court's application of the law to the facts in this case, we believe that the defendant's driving into the interstate emergency lane and continuing to weave within his lane on North State of Franklin Road gave Officer Brown reasonable suspicion to stop him. We conclude that the trial court erred in granting the defendant's motion to suppress.

Based upon the foregoing and the record as a whole, we reverse the judgment of the trial court and remand the case for further proceedings.

_____
JOSEPH M. TIPTON, JUDGE

-4-