IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 20, 2005

## STATE OF TENNESSEE v. EDWARD M. PATTERSON

**Direct Appeal from the Criminal Court for Davidson County
No. 3519     Mark J. Fishburn, Judge**

----

**No. M2004-02666-CCA-R3-CD - Filed September 20, 2005**

----

The defendant, Edward M. Patterson, pled nolo contendere to possession of drug paraphernalia and criminal trespass and received respective sentences of sixty and thirty days, both suspended. As a condition of his plea, the defendant reserved a certified question of law as to whether there was adequate reasonable suspicion to support a seizure of his person. Because we find the certified question is not dispositive of the charges, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Ross E. Alderman, District Public Defender; Emma Rae Tennent, Assistant Public Defender (on appeal); and Kyle F. Mothershead, Assistant Public Defender (at trial), for the appellant, Edward M. Patterson.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jennifer S. Tackett, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

### Procedural History

On January 7, 2004, the defendant was issued three misdemeanor citations as a result of a police stop while on the premises of a public housing project, Sam Levy Homes, located in Nashville. The citations were for criminal trespass, possession of a controlled substance, and possession of drug paraphernalia. He filed a motion to suppress all evidence obtained as a result of the stop, arguing the stop was an illegal seizure. Subsequently, the trial court held a motion to

suppress hearing and issued findings and conclusions from the bench, denying the defendant's motion. The defendant entered a plea agreement wherein he agreed to plead nolo contendere to criminal trespassing and possession of drug paraphernalia and the State agreed to dismiss the possession of a controlled substance citation. Pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(i), the defendant reserved a certified question of law asking whether the police officer's seizure of him was supported by adequate reasonable suspicion.

## Suppression Hearing

Officer Ken Mahoney, of the Metropolitan Police Department, testified that on January 7, 2004, he observed the defendant walking on the premises at Sam Levy Homes, property of the Metropolitan Development and Housing Agency ("MDHA"). The defendant was walking along the edge of the property between a fence and the end of the apartment buildings. Describing the property as "one of the highest crack/cocaine sell areas in Davidson County," Mahoney explained that he encounters a number of people walking along this same property edge "trying to avoid contact with police." The officer testified about his encounter with the defendant:

> The defendant was watching me and was aware of my presence, seemed nervous. As I approached the defendant, he dropped an item to the ground as I was approaching him and that was recovered and determined to be a crack pipe. The defendant was also subsequently found not to be on lease, and a search ensued that revealed a hand-rolled cigarette containing a, it was partially burned, containing a substance that I believed to be marijuana, a green leafy substance that also smelled like marijuana . . . .

Officer Mahoney said he was approximately sixty feet away from the defendant when he first observed him and was only ten feet away when the defendant dropped the crack pipe. Mahoney could not specifically recall what he said to the defendant or when the defendant stopped, explaining:

> Either I had said something to him for him to stop, by asking him if he had any identification on him or -- he was looking at me when he dropped this item and saw that I saw the item and picked it up, and he did claim ownership of the item, which was a crack pipe.

Mahoney later clarified that the defendant dropped the crack pipe "prior to me even addressing him."

Officer Mahoney testified that the Sam Levy Homes were MDHA property and that there were "at least two, sometimes four" no trespassing signs posted on every apartment building. He said that the defendant would have been able to see these signs from where he was walking. Mahoney explained that officers stop people who are on MDHA property "on a daily basis" to see if they are "on-lease."

On cross-examination, Officer Mahoney acknowledged that he initially did not know if the defendant was a resident of Sam Levy Homes or was visiting a resident. Asked why he believed the defendant looked "nervous," Mahoney testified that the defendant "wasn't watching where he was walking. He was walking forward looking 90 degrees to his right at me." Mahoney further explained, "It would seem nervous to me when someone's walking in a direction, has no reason to worry about being in the middle of an action that's illegal not to look where they're going, but he in fact did not."

The defendant testified that he was walking through the Sam Levy Homes to get to the bus stop and did not observe any "no trespassing" signs. He explained that he was walking on a "path that people have been walking through there for years and years" and it was the closest route to the bus stop. He admitted "going through the projects all [his] life" and said he actually lived there before being told to leave as a result of domestic problems. The defendant testified that, when he saw Officer Mahoney, he did not run or act nervous and only stopped when the officer called out, "'Hey, stop.'" He said the officer found the marijuana cigarette on the ground next to the him but denied that it was his.

On cross-examination, the defendant denied knowing that he could not be on MDHA property unless he was on a lease. He acknowledged that he previously lived in an apartment with a female friend and was told to leave by officers because he was not on the lease. The defendant claimed that Officer Mahoney lied when the officer said he dropped the crack pipe and denied that he had the marijuana cigarette in his pocket.

Asked by the trial court about the bus stop he was going to, the defendant acknowledged the route he took through the MDHA property was not the most direct, and, in fact, he actually would have never reached the bus stop in the direction he was walking. The defendant explained that he took the longer indirect route to avoid other people in the area who try to sell drugs.

After the hearing, the trial court issued an oral order from the bench denying the defendant's motion to suppress. The trial court found:

> [Officer Mahoney] had reasonable suspicion, based on specific and articulable facts to approach [the defendant] and in effect seize him in order to approach him. Then once he did that, as far as the crack pipe is concerned, I think the argument there is that he abandoned that when the officer testified that he dropped it to the ground, and really doesn't have any standing as to the crack pipe.
>
> The criminal trespass, since I have already found that [Officer Mahoney] had reasonable suspicion supported by specific and articulable facts to approach him and obviously that . . . citation was justified. And I agree with the State, once [Officer Mahoney] found the crack pipe in his immediate vicinity, after observing him drop an object, and he didn't testify that there were any other objects in the area, I think having that paraphernalia on him raises sufficient probable cause to do a search of

his person. I mean, if you have paraphernalia on you, it certainly gives probable cause to believe that he may also have drugs to put into that paraphernalia. So, I believe a search of his person under these circumstances was justified and supported by probable cause.

## ANALYSIS

### Certified Question of Law

Rule 37 of the Tennessee Rules of Criminal Procedure provides, in pertinent part, that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if the defendant has reserved a certified question of law:

> (i) [T]he defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

> (A) the judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;

> (B) the question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

> (C) the judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and

> (D) the judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2).

In analyzing the current appeal, we must first independently determine that the certified question meets the requirements of Rule 37 and is indeed dispositive of the case. State v. Preston, 759 S.W.2d 647, 651 (Tenn. 1988) (explaining that prior to "reaching the merits of a certified question, the appellate courts must first determine that the district attorney general and the trial judge have found the certified question to be dispositive of the case and then determine if the record on appeal demonstrates how that question is dispositive of the case") (citing State v. Jennette, 706 S.W.2d 614, 615 (Tenn. 1986)). A certified question issue is dispositive only "when the appellate court 'must either affirm the judgment or reverse and dismiss.'" State v. Walton, 41 S.W.3d 75, 96 (Tenn. 2001) (quoting State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). If we find

the certified question is not dispositive, we must dismiss the appeal. Preston, 759 S.W.2d at 651. In addition, we are not "bound to accept as dispositive any certified question that the district attorney general and the trial judge agree is dispositive." Id.

As we previously have set out, the charge as to the marijuana cigarette which Officer Mahoney said he found on the defendant's person was dismissed and the defendant entered pleas as to possession of drug paraphernalia for the crack pipe found on the ground and for criminal trespass, since he was not a resident of the housing project. The trial court and the State agreed that the following certified question of law concerning the seizure of the defendant was dispositive of these charges:

> Was Officer Mahoney's seizure of [the defendant], by way of calling out to him and walking toward him from some sixty feet away, supported by adequate reasonable suspicion such that the evidence obtained as a result of the seizure was not "fruit of the poisonous tree" in violation of the Tennessee and U.S. Constitutions, considering that the bases of Officer Mahoney's suspicion were that:
>
> (a) [The defendant] was walking through MDHA property at approximately 2:15 in the [a]fternoon[,]
>
> (b) The particular section MDHA property that he was walking through was a high drug area,
>
> (c) That Officer Mahoney had patrolled this area for three (3) years and routinely was on the lookout for persons trespassing on MDHA property,
>
> (d) That Officer Mahoney's purpose in stopping [the defendant] was to determine if [he] was a resident of the MDHA property [and]
>
> (e) [The defendant] seemed nervous f[ro]m Officer Mahoney's vantage point, and turned his head at a ninety-degree angle from the direction in which he was walking in order to eyeball Officer Mahoney while continuing on his path.

We are not bound by the trial court and the State's determination and, to the contrary and as we will explain, find this certified question is not dispositive.

### Drug Paraphernalia

In his motion to suppress, the defendant apparently sought to suppress the crack pipe, that Officer Mahoney testified he saw him drop, as "fruits of Officer Mahoney's unlawful, 'hunch'-based seizure of" the defendant. Specifically, the defendant argued in his motion:

All evidence obtained from [the defendant] was directly and immediately related to this unlawful seizure, and not at all attenuated. Furthermore, there was no consent given to search at any time. The evidence, including any alleged statements by [the defendant], must be suppressed as fruit of the poisonous tree. . . .

Furthermore, Officer Mahoney did not effect, and could not legally have effected, a custodial arrest for the alleged trespass and alleged paraphernalia charges. . . . Nonetheless, after allegedly obtaining evidence supporting these charges, rather than cite and release [the defendant] Officer Mahoney conducted an unlawful "search incident to arrest." The fruits of this search, in particular, must be suppressed.

Thus, as we understand, the defendant is arguing that the crack pipe must be suppressed because it was obtained as the result of an illegal seizure of his person.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides the basis for our analysis:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Additionally, Article 1, section 7 of the Tennessee Constitution provides

[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The Tennessee Supreme Court has explained that "[t]he purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials,'" State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (quoting Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)), and that "'[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment,'" id. (quoting State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)).

In Rakas v. Illinois, 439 U.S. 128, 140, 99 S. Ct. 421, 429 (1978), the United States Supreme Court, addressing a Fourth Amendment illegal search and seizure claim by a defendant asking to

suppress evidence, explained that he first must claim an interest in the place searched or the item seized:

> [T]he question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.

In Rakas, the defendants sought to suppress a sawed-off rifle and rifle shells that were seized by police from a car in which they were passengers. The Court, noting the defendants "asserted neither a property nor possessory interest in the automobile, nor an interest in the property seized," concluded that they could not challenge the seizure under the Fourth Amendment because neither had a legitimate expectation of privacy in the area searched or the items seized. Id., 439 U.S. at 148-49, 99 S. Ct. at 433.

In this case, the defendant is seeking to suppress the crack pipe, although denying any knowledge of it. Officer Mahoney testified that he saw the defendant drop the crack pipe before he spoke to the defendant. The trial court, giving credence to the officer's testimony, found the defendant had dropped the crack pipe and, thus, abandoned it. As such, the defendant, under Rakas, has no standing to make a Fourth Amendment challenge as to the crack pipe.

Accordingly, the certified question, as written, is not dispositive to the drug paraphernalia charge. The defendant apparently believes that if we find the seizure of his person to be illegal, then evidence of the crack pipe would have to be suppressed as fruit of the illegal seizure. However, even assuming arguendo that the defendant was seized illegally by Officer Mahoney, the additional question remains as to whether the crack pipe, which the trial court implicitly found had been dropped and abandoned before the defendant was told to stop, must be suppressed as a fruit of the subsequent illegal seizure. In the usual situation, if we concluded that the trial court erred in determining that the defendant was illegally seized, we then would have to remand the matter to the trial court to determine the effect of the defendant's seizure as to his earlier abandoning the pipe. However, in this matter, the trial court already has concluded that the defendant abandoned the pipe before Officer Mahoney spoke to him. Since this finding was not put at issue by the certified questions, the drug paraphernalia charge could proceed regardless of the legality of the defendant's being stopped. Thus, the certified question is not dispositive to this charge.

### Criminal Trespass

Further, the defendant apparently is seeking to suppress evidence of his trespassing on Sam Levy Homes property as a fruit of the "illegal" seizure of his person. As we have already concluded that the crack pipe would not have been suppressed under a Fourth Amendment challenge, we additionally conclude that once Officer Mahoney observed the defendant "dropping" the crack pipe, he could question the defendant about his place of residence and charge him with trespassing upon

finding out he was not a resident of the housing projects. This is true regardless of whether or not the "seizure" of the defendant is deemed illegal. Again, we find the certified question is not dispositive of the criminal trespass issue.

## CONCLUSION

For the foregoing reasons, we find the certified question is not dispositive of the issues in this case and, therefore, dismiss the appeal.

_____
ALAN E. GLENN, JUDGE