# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 22, 2014 Session

## STATE OF TENNESSEE v. SOMER D. WILD

**Appeal from the Criminal Court for Hamblen County**
**No. 12CR715     John F. Dugger, Jr., Judge**

**No. E2013-01777-CCA-R3-CD - Filed August 20, 2014**

The defendant, Somer D. Wild, was indicted for driving under the influence, a Class A misdemeanor. After the trial court denied her motion to suppress the legality of the traffic stop, the defendant pled guilty to the offense and was sentenced to eleven months and twenty-nine days, suspended following the service of forty-eight hours in jail. As part of her plea of guilty, the defendant reserved as a certified question of law the legality of the traffic stop of her vehicle. Following our review of the record and the video recording of the traffic stop, we conclude that the trial court erred in denying the motion to suppress. Accordingly, we reverse the judgment of conviction and dismiss the indictment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Dismissed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Jonathan M. Holcomb, Morristown, Tennessee, for the appellant, Somer D. Wild.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Dan E. Armstrong, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The defendant was operating her vehicle on a rainy evening in Morristown. The quality of the video recording of her driving is poor, apparently because of both weather and road conditions. As we will explain, the State relied upon the video of the defendant's driving

to justify the stop of her vehicle.

At the hearing on the defendant's motion to suppress evidence, Officer Brad Rice of the Morristown Police Department testified that on April 25, 2012, he was working the late-night shift, traveling westbound on West Andrew Johnson Highway when he observed the defendant's black Range Rover pull out from Taco Bell in front of him. Officer Rice testified as to his limited memory of the incident: "What I remember is just from the video. I know in the video I say they went over the line twice; that's not in there. The portion where she's going over the line for the long amount of time is in that video, if I recall correctly."

Additionally, Officer Rice acknowledged that he could not remember how long the defendant straddled the line but that it was an "extended thing. It's on the video." He added that the defendant straddled the turn lane and fast lane for "a significant amount of time" and never turned left or went back into her lane. As to his bases for stopping the defendant's vehicle, he responded, "I do not believe everything is on the video because I stated in the video that you went over the line twice, which would be failure to maintain there, due to that prerecord being only 30 seconds. But due to the age, I just – I really can't remember."

At the conclusion of the hearing on the motion to suppress, the trial court denied the motion, making lengthy oral findings:

> The Court finds sometime after midnight on April 25th, 2012 that Officer Rice was traveling on West AJ Highway, observed a black Range Rover pull out of Taco Bell heading west on West Andrew Johnson Highway. The Court finds that he is not clear on his recollection as to what occurred prior. He . . . can't say there's clear and convincing evidence as to . . . when, where and what happened, but the tape speaks for itself. The tape shows, and you have to watch the tape very closely, and I think you have to be familiar with the roads, and, of course, I've lived in Hamblen County 53 years and I'm pretty familiar with the area. . . . [T]he Court finds that [the defendant] did cross over that lane – that line into the turn lane in the vicinity of, it appears, the intersection of Economy Road. . . . And traveled a short distance straddling that line. But it's difficult to see because the roads are wet, there is glare from the headlights, from the streetlights on the road, but if you look at the line, there is a line, and that she did cross over into that lane, and then she proceeded back into the proper lane, and made a proper turn, turned into the Pilot. Under Binette mere drifting in one's own lane[] does not constitute reasonable suspicion. And that's what the officer has to have is a reasonable suspicion or reasonable and articulable facts that criminal activity could be afoot and there could be a possible intoxicated driver and that he has enough reasonable suspicion to stop the vehicle.

In this case, it's not really her own lane of travel, a turn lane. And the way West Andrew Johnson Highway is set up, and I take judicial notice of this, there [are] two lanes traveling east, two lanes traveling west. There is a middle lane in between the two lanes on each side. It's a five-lane road. That is a shared turn lane. You can pull in that lane and go left, or you can pull in either direction. It's shared by both lanes of travel as to a turn lane. By crossing over into that other turn lane, there could be another vehicle coming using that turn lane. It could have been an accident. There is reasonable suspicion to stop the vehicle, clearly, by that. The officer doesn't have an independent recollection but the tape speaks for itself. He has reasonable suspicion to stop the vehicle.

In its findings, the trial court identifies the location in Morristown depicted on the video and then takes detailed judicial notice of the layout of the driving lanes in the area. Since the defense did not object to the court's making these findings, we will not review whether the court could take judicial notice of such details.

## ANALYSIS

We will review the basis for the defendant's motion to suppress, that Officer Rice had no specific, objective facts from which he could have had a reasonable suspicion that she was engaged in any criminal activity.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999). However, the application of the law to the facts found by the trial court is a question of law and is reviewed de novo without presumption of correctness. See State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Applying this standard of review, we must now determine whether specific and articulable facts existed to authorize a stop of the defendant's vehicle. The Fourth

Amendment to the United States Constitution provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." "Article I, section 7 of the Tennessee Constitution similarly prohibits unreasonable searches and seizures and is identical in intent and purpose with the Fourth Amendment." Binette, 33 S.W.3d at 218; see Sneed v. State, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968). "Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629.

"One exception to the warrant requirement exists when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." Binette, 33 S.W.3d at 218. Thus, in order for the stop in this case to be constitutionally valid, at the time that Officer Rice turned on his vehicle's blue lights, he must have had reasonable suspicion, supported by specific and articulable facts, that the defendant had committed, or was about to commit, a criminal offense. See id.

On appeal, the State relies on the trial court's finding that the defendant crossed the fast lane into the turn lane and "traveled a short distance straddling that line." Additionally, the State points to the trial court's conclusion that "[b]y crossing over into that other turn lane, there could be another vehicle coming using that turn lane. [There] could have been an accident. There is reasonable suspicion to stop the vehicle, clearly, by that."

We have carefully reviewed the videotape from which Officer Rice testified. The camera's view is through the windshield of Officer Rice's vehicle. At the time, a moderate rain was falling and the vehicle's windshield wipers were steadily operating. The police car followed the defendant's for approximately one minute, through a commercial area lined with businesses, all of which appeared to be illuminated by their lights and signs. Additionally, there were functioning street lights on both sides of the street. The street in the direction which the defendant was traveling was wet and reflected the lights which lined its sides. It appears the street had at least two lanes of travel and a shared middle turn lane in the direction taken by the defendant, with intermittent lane markings. The markings are not reflective and are difficult to identify, as the road curves, and the defendant's vehicle follows, to the right and then the left while the video was being made.

In sum, this case boils down to the approximately one-minute video, since Officer Rice recalled the incident "just from the video." Although the tape was played in court during the evidentiary hearing, there was no simultaneous testimony from Officer Rice

identifying the times when the defendant's vehicle drifted into another lane. The trial court provided a detailed description of the lane markings in the area and recognized that the tape had to be watched "very closely" and that the viewer "ha[d] to be familiar with the roads." We conclude that the State's proof must fail. The deficiencies in the videotape, and Officer Rice's inability to recall the incident, both coupled with the fact of the trial court's having to supply information regarding lane markings in the area compel us to conclude that the court erred in determining that Officer Rice lawfully stopped the defendant's vehicle.[1] Accordingly, we reverse the judgment of the trial court and dismiss the DUI charge against the defendant.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we reverse the judgment of the trial court and dismiss the indictment charging the defendant with driving under the influence of an intoxicant.

_____
ALAN E. GLENN, JUDGE

---

[1]When a video is being played during the testimony of a witness, it is helpful to an appellate court to have the witness explain what is depicted on the video and the points, if any, when particular attention should be paid. For instance, in this case, Officer Rice could have been asked to testify regarding the arrangement of lanes and the specific points in which, in his view, the defendant's vehicle had strayed into another lane. This testimony is particularly important when, as here, the video is of poor quality and this court must make its own *de novo* determinations as to what the video shows.