

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2017 Session

## STATE OF TENNESSEE v. MICHAEL CHRIS LUTHI

**Appeal from the Circuit Court for Coffee County**
**No. 40330      Vanessa A. Jackson, Judge**

_____

### No. M2016-00427-CCA-R3-CD

_____

A Coffee County grand jury indicted the Defendant, Michael Chris Luthi, for DUI, third offense, DUI *per se,* and violation of the seat belt statute.  The Defendant filed a motion to suppress the evidence found as a result of a search of his vehicle, contending that the trooper did not have reasonable suspicion to support the stop.  The trial court denied the motion.  A Coffee County jury convicted the Defendant of DUI, third offense and of violating the seat belt statute.  On appeal, the Defendant contends that the trooper could not have seen that the Defendant was not wearing his seat belt and, thus, lacked reasonable suspicion to stop the Defendant's vehicle.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Douglas D. Aaron and C. Brent Keeton, Manchester, Tennessee, for the appellant, Michael Chris Luthi.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulman, Assistant Attorney General; Craig Northcott, District Attorney General; and Kenneth J. Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the stop of the Defendant's vehicle by Tennessee State Trooper Donnie Clark in Tullahoma, Tennessee.  The Defendant filed a motion to suppress the stop of his vehicle and any evidence obtained as the result of the stop, contending that the trooper did not have reasonable suspicion to believe the Defendant

was not wearing his seat belt. He contended that "due to the dark window tinting on the [D]efendant's rear window, it is impossible to ascertain whether or not the [D]efendant was wearing his seat belt." The trial court held a hearing on the motion, during which the parties presented the following evidence: Trooper Clark testified that he had in the past encountered drunk drivers during the hours of 6:00 am and 7:00 am. Trooper Clark recalled that in the present case, he encountered the Defendant at 7:00 am and that it was daylight. He witnessed the Defendant's vehicle traveling on North Polk Street, and he turned onto the street behind the Defendant's vehicle. Trooper Clark sped up to the Defendant's vehicle and saw that the Defendant was not wearing his seat belt. Trooper Clark then "came into contact" with the Defendant and ascertained that the Defendant was under the influence of alcohol.

On cross-examination, Trooper Clark agreed that a video recording was taken of the stop, and it was played for the court. Trooper Clark indicated where, on the video, he noticed that there was no "shadow of [the Defendant's] seat belt across his left shoulder." The trooper also indicated where in the video the Defendant could be seen putting on his seat belt. Trooper Clark testified that the video recording did not depict things exactly as he saw them in person, meaning the "tints and shadows" in the Defendant's vehicle. He agreed that the Defendant's back window was tinted.

On redirect-examination, Trooper Clark testified that he had perfect eyesight and that it was his objective belief that the Defendant was not wearing his seat belt when Trooper Clark stopped his vehicle.

Based upon this evidence, the trial court denied the Defendant's motion to suppress. It found:

> The Court has reviewed the video submitted into evidence several times. Unfortunately the images are very small and not easy to see. The objects in the video are not shown at the same size or scale as they actually existed on the morning of [the stop]. Viewing the video on a small computer screen, the rear window of the truck is approximately two or three inches wide. However, the video does reflect that Trooper Clark pulled right up behind the Defendant's vehicle at 7:33 [a.m.] when the Defendant was at a stop sign, and he was in close proximity to the Defendant's rear window. Obviously, Trooper Clark, who was observing the Defendant's truck in full scale, had a better opportunity to see into the rear window of the truck than is depicted [in the video]. Nonetheless, even with the small scale of the video, the Defendant's head and other features of the truck are visible.

2

The Court finds that Trooper Clark's testimony is credible, and that he had the ability to see through the rear window of the Defendant's truck when he pulled up behind the truck at the stop sign. The Court finds that the Trooper personally observed the Defendant was not wearing his seat belt. Based upon this observation, Trooper Clark had a reasonable suspicion, supported by specific and articulable facts, that the Defendant was in violation of Tenn. Code Ann. § 55-9-603. Therefore, a warrant was not required for Trooper Clark to initiate an investigatory stop of the Defendant.

A Coffee County jury convicted the Defendant at trial of DUI, third offense and violation of the seat belt law. A transcript of the trial is not included in the record on appeal; however, the Defendant provided a statement of the evidence, in which he maintained that Trooper Clark's testimony at trial was consistent with his testimony at the suppression hearing. The Defendant appeals both convictions on the basis that the trial court erred when it denied his motion to suppress.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress because Trooper Clark "could not have seen the absence of a seat belt being worn by the [Defendant] based on what is revealed in the video" recording. He further contends that the evidence in the video preponderates against the trial court's finding that the trooper could have seen the seat belt not being worn. The State responds that Trooper Clark had sufficient probable cause to effect the stop and that the evidence does not preponderate against the trial court's findings that he was a credible witness. We agree with the State.

When this Court reviews a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. *See id*. However, the application of the law to the facts found by the trial court is a question of law and is reviewed de novo. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968)). The analysis of any warrantless search must begin with the proposition that such searches are *per se* unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Tyler*, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the State establishes that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

An exception to the warrant requirement exists when a police officer conducts an investigatory stop based on a reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218. Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]" *Binette*, 33 S.W.3d at 218 (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Reasonable suspicion is determined based upon the totality of the circumstances of the encounter. *Binette*, 33 S.W.3d at 218 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). The police may stop a vehicle if they have either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *State v. Vineyard*, 958 S.W.2d 730, 731 (Tenn. 1997).

Tennessee Code Annotated section 55-9-603(a)(1) provides that "[n]o person shall operate a passenger motor vehicle on any highway, as defined in § 55-8-101, in this state unless the person and all passengers four (4) years of age or older are restrained by a safety belt at all times . . . ." Section 55-9-603(f)(1) provides that "[a] law enforcement officer observing a violation of this section shall issue a citation to the violator, but shall not arrest or take into custody any person solely for a violation of this section."

The evidence presented at the suppression hearing was Trooper Clark's testimony and the video recording from his police car. The trial court found that Trooper Clark's testimony was credible and that the video supported his testimony. Trooper Clark testified that he pulled up behind the Defendant's vehicle at a stop sign and observed through the vehicle's rear window that the Defendant was not wearing a seat belt.

4

Trooper Clark testified that he was able to see through the Defendant's vehicle's window that there was no "shadow" or outline of a seat belt restraining the Defendant, so he stopped the Defendant. Trooper Clark then observed the Defendant putting on his seat belt after he was stopped, confirming that the Defendant had not been wearing it when Trooper Clark effectuated the stop. Regardless, a police officer's reasonable suspicion that a traffic violation is occurring is a sufficient basis to conduct a stop of a vehicle. *Vineyard*, 958 S.W.2d at 734. Our Supreme Court noted in *State v. Brotherton* that the "articulable and reasonable suspicion" of a police officer that a traffic violation has occurred is the proper inquiry into the legality of the stop, not whether in fact a violation has occurred. *State v. Brotherton*, 323 S.W.3d 866, 871 (Tenn. 2010). The Defendant's infraction of traveling without a seat belt was alone sufficient to provide Trooper Clark with the reasonable suspicion necessary to stop the Defendant's vehicle.

We conclude that the evidence does not preponderate against the trial court's findings. The video is consistent with the trial court's finding that the Defendant's shoulders and head area were visible to Trooper Clark when he stopped the Defendant's vehicle. The totality of circumstances support that Trooper Clark had specific articulable facts sufficient to rise to the level of reasonable suspicion as a basis for an investigatory stop of the Defendant's vehicle. Accordingly, we affirm the trial court's judgment denying the Defendant's motion to suppress and therefore, we affirm the judgments of conviction.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

5