IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 24, 2006

## STATE OF TENNESSEE v. TARA L. BEFFREY

**Appeal from the Criminal Court for Hamblen County**
**No. 05CR388     James E. Beckner, Judge**

_____

**No. E2005-02852-CCA-R3-CD - Filed November 16, 2006**

_____

The defendant, Tara L. Beffrey, was convicted of driving under the influence (DUI), second offense, a Class A misdemeanor, for which she received an eleven-month, twenty-nine-day sentence; violation of the implied consent law, a Class A misdemeanor, for which she received a five-day consecutive sentence; and driving on a revoked license, a Class B misdemeanor, for which she received a six-month concurrent sentence. On appeal, the defendant argues that: (1) the convicting evidence was insufficient to prove DUI and (2) the vehicle stop that led to her arrest was unconstitutional. We conclude no error exists, and we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Greg W. Eichelman, District Public Defender (on appeal), and Michael C. Murphy, Morristown, Tennessee (at trial), for the appellant, Tara L. Beffrey.

Michael E. Moore, Acting Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Kimberly Lane, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was stopped while driving her car on Andrew Johnson Highway in Hamblen County on May 21, 2005. At the trial, Morristown Police Officer Nathan Wolfe testified that he encountered the defendant around 5:24 a.m. He said that he had been a police officer since February 2004, had received DUI training, and had observed several field sobriety tests. He said he was driving west on Andrew Johnson Highway, when he saw the defendant in her car directly in front of him. He said he observed the defendant driving without having her seatbelt fastened, as he could see the shoulder harness hanging beside the defendant. He said that although the sun had not yet

risen, the road was well-lit and he was using his headlights. He said he followed the defendant for one to two minutes before stopping her.

Officer Wolfe testified that he approached the defendant and noticed "a strong odor of alcohol . . . about her person" and her slurred speech. He said the defendant told him that she drank two beers. Officer Wolfe then performed two "pre-exit" tests to establish probable cause that the defendant was driving while intoxicated before he ordered her to get out of her car. The first pre-exit test was a "finger count," and for the second, Officer Wolfe instructed the defendant to say the alphabet, from the letter E to the letter R. Officer Wolfe testified that the defendant failed both tests. He then ordered her to exit the car to perform two field sobriety tests. He said the defendant was unable to complete the one-legged stand test successfully. He said he noticed several "cues" indicating her intoxication: her non-standing foot touched the ground once, she used her arms for balance, she swayed from side to side, she held on to the rear of her car, and "her counting was way off." He said that during the second test, the "nine-step, heel-toe, walk and turn" test, he noticed three "cues" indicating that the defendant was intoxicated: she "stepped off the line" several times, she was unable to touch her heel to her toes several times, and she was unable to balance on the turn. Officer Wolfe said he was required to observe two cues for each test before determining whether someone had failed the test. After the tests, Officer Wolfe placed the defendant under arrest.

Officer Wolfe testified that the defendant told him she had taken some medication and that he offered to give the defendant a blood test to determine her blood alcohol level. He said the defendant refused to take the blood test. He said he explained the consequences of refusing the blood test to the defendant, which included that she would have her driver's license suspended. He said the defendant refused to sign the implied consent form, which informed her of her rights and the consequences of refusing an offered breath or blood test. Officer Wolfe testified that he checked the status of the defendant's driver's license and discovered that it had been revoked and that, in his opinion, the defendant was "too intoxicated to drive."

The state played the videotape documenting the field sobriety tests performed on the defendant. The tape shows Officer Wolfe and another officer standing with the defendant, who was sitting in her car. The tape begins with Officer Wolfe instructing the defendant on the "finger count" test. The defendant was instructed to put her fingers together and to count from one to four and then backwards from four to one. The defendant had difficulty counting backwards from four to one. Next, Officer Wolfe instructed the defendant to say the alphabet from "E as in Edward to R as in Robert." The defendant repeated the phrase "E Edward, R Robert" several times, asked if she had to say the alphabet backwards, and was unable to say the alphabet as instructed. The defendant stepped out of the car upon Officer Wolfe's instruction, and she asked to take off her shoes. The tape shows the defendant standing on one foot to remove each of her boots. Officer Wolfe instructed the defendant on the one-legged stand, telling the defendant to stand on one leg while counting from "one one-thousand" to "thirty one-thousand." The defendant was unable to keep her balance the entire time and to count as instructed. During the next test, the nine-step, heel-toe walk, the defendant can be seen wobbling slightly while walking and wobbling considerably while turning. The defendant told Officer Wolfe that she had consumed two beers. Officer Wolfe then instructed

the defendant to follow his finger with her eyes. He placed the defendant under arrest and told her, "I think you are too intoxicated to drive."

On cross-examination, Officer Wolfe testified that the defendant did a good job of taking off her tall, high-heeled boots while standing on one leg. He said he did not notice the defendant swerving or weaving much while she was driving. He said that she was in the correct lane of traffic with her headlights on and that he did not recall her speeding. He said he did not stop the defendant because of her driving, but only because she was not wearing her seatbelt. He said that although he could not see her lap belt, it was obvious to him that her seatbelt was not across her shoulder. He said the defendant readily complied when he signaled her to pull over and when he asked her to perform the field sobriety tests. Officer Wolfe said he did not turn on his video camera when he first observed the defendant. He said he did not always record seatbelt violations and nothing about the defendant's driving indicated that he should record her while driving. Regarding the nine-step, heel-toe walk, he said that there was no actual line on which the defendant was supposed to walk and that by "stepping off the line" he meant the defendant did not walk in a straight line. He said that he was trained to provide an actual line for DUI suspects to walk on but that it was more important that the ground on which they were walking was level.

Officer Wolfe testified that he did not ask the defendant whether she had a restricted license that allowed her to drive to and from work. He did not recall the defendant's telling him in jail that she wanted to take a blood test. He did not know whether he gave the defendant the opportunity to agree to the blood test after she had been taken to jail, but he said he did ask her at least twice whether she would take a blood test. He also denied having any knowledge that the defendant and his wife had worked together and did not get along with one another. He said that he was previously acquainted with the defendant but that he had never talked to her.

Morristown Police Officer David Campbell testified that he assisted Officer Wolfe with the stop involving the defendant and that he was the second officer in the video. He observed Officer Wolfe's having the defendant perform field sobriety tests. He said that on the finger count test, officers were trained to look at whether the subject was able to follow directions and to count numbers while touching fingers together. He said he remembered that the defendant "messed up on the count real bad" and that her speech was slurred. He said that the defendant's attempt to say the alphabet "was just completely wrong." He said this indicated to him that the defendant was intoxicated. He said he did not remember the details of how the defendant performed on the one-legged stand or the "walk and turn" but did remember thinking that the defendant was intoxicated. Officer Campbell concluded, based on his training and experience, that the defendant was intoxicated. He acknowledged that he searched the defendant's car after her arrest and noted that no beer cans were in the car. He said he was not at the police department when the defendant got to jail and did not hear whether the defendant asked to take a blood test.

Both the state and the defense rested on the testimony of the officers and the videotape. The jury found the defendant guilty of DUI, violation of the implied consent law, and driving with a revoked license. The defendant stipulated that this was her second offense DUI.

# I.  SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence presented at trial was insufficient to establish her conviction for DUI.  She argues that the entirely circumstantial evidence failed to exclude all other reasonable hypotheses except guilt.  The state counters that the evidence, including the testimony of the officers, was sufficient beyond a reasonable doubt to support the conviction.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state.  See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  "A crime may be established by direct evidence, circumstantial evidence, or a combination of the two."  State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998).

The defendant argues that the state's entire case was based on circumstantial evidence which was not sufficient to prove that she was intoxicated.  She argues that her driving immediately preceding the stop and arrest and her coordination in taking off her boots demonstrated that she was not intoxicated.  We conclude that the evidence was sufficient to prove that the defendant was intoxicated.  Officer Wolfe testified that the defendant failed two pre-exit tests and two field sobriety tests.  Both Officer Wolfe and Officer Campbell testified that based on their training and experience, they determined the defendant to be intoxicated.  Officer Wolfe also testified that he smelled alcohol on the defendant and that she slurred her speech.  Moreover, the jury viewed the videotape of the defendant's performance on the pre-exit and field sobriety tests.  It is true that for an accused to be convicted of a criminal offense based solely upon circumstantial evidence, the facts and the circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt."  State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting State v. Crawford, 225 Tenn. 478, 470, S.W.2d 610, 612 (1971)).  However, this court has often found that an arresting officer's testimony alone is sufficient to support a defendant's conviction for DUI.  See, e.g., State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).  Here, the testimony of the officers, if accredited by the jury, would result in the finding that the defendant was intoxicated.  The jury apparently chose to accredit the testimony of the officers.  We see nothing in the record, including the videotape of the defendant during the traffic stop, that warrants overruling this finding.  We conclude that the evidence was sufficient to convict the defendant of DUI.

## II. VEHICLE STOP

The defendant argues that Officer Wolfe's stop of her vehicle was unconstitutional. Before the trial, a hearing on the defendant's motion to suppress was held. The sole witness at the hearing was Officer Wolfe, who testified that while driving behind the defendant on Andrew Johnson Highway, he observed the shoulder harness of the defendant's seatbelt hanging on the side of the car's interior. He said that he was approximately one car length behind the defendant, that the road was well-lit, and that he was using his headlights. He said it was apparent to him that the defendant was not wearing her seatbelt. He followed the defendant for one to two minutes before he stopped her for not wearing her seatbelt. He said he did not observe the defendant speeding, greatly weaving or swerving, or driving erratically.

The defendant included in the record two videotapes that purport to show the darkness of the area where the defendant was stopped in the early morning. In one video, a woman driving a car announced that she is driving east on Andrew Johnson Highway. The video shows another car passing on the opposite side of the highway, and the interior of the passing car is not visible. In the second video, a voice announced that it is 5:15 a.m. on May 29. The car from where the camera records pulled onto Andrew Johnson Highway headed west, following closely behind another car. The driver of the car in front unbuckled and rebuckled her seatbelt. While it is difficult to see the seatbelt, one can see the outline of the driver in the first car. The purpose of the videos is to show that it would be impossible to see whether the defendant was wearing her seatbelt in the darkness of the early morning.

The trial court accredited the testimony of Officer Wolfe that he observed the defendant not wearing her seatbelt. The trial court held that because not wearing a seatbelt is a criminal violation, the officer was justified in stopping the defendant for that reason. The defendant argues that the seatbelt violation was a pretext for stopping the defendant and that it was too dark to observe the defendant's seatbelt. The state counters that the evidence does not preponderate against the trial court's findings and that vehicle stops can be based on minor traffic violations, such as seatbelt violations. We agree with the state.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which we review de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968)). In order to stop a vehicle

without a warrant, a law enforcement officer must have "probable cause, or reasonable suspicion supported by specific and articulable facts, to believe that an offense has been or is about to be committed." State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002) (citing State v. England, 19 S.W.3d 762, 765 (Tenn. 2000)). A vehicle stop is constitutional if an officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred. State v. Vineyard, 958 S.W.3d 730, 734 (Tenn. 1997). In determining whether a vehicle stop was constitutionally justified, we look not at the subjective motivation of the stopping officer, but at whether there was in fact probable cause to believe a violation had occurred. See Whren v. United States, 517 U.S. 806, 813, 112 S. Ct. 1769, 1774 (1996). The federal Sixth Circuit and this court have upheld vehicle stops based on violations of the state's seatbelt law. U.S. v. Draper, 22 Fed. Appx. 413 (6th Cir. 2001); State v. Carl Martin, No. W2002-00066-CCA-R3-CD, Shelby Co. (Tenn. Crim. App. Jan. 2, 2000).

In this case, the trial court found that Officer Wolfe observed a violation of the state's seatbelt law, which requires a driver and passengers to wear safety belts when a vehicle is in forward motion. See T.C.A. § 55-9-603(a)(1). The trial court accredited Officer Wolfe's testimony that he saw that the shoulder harness of the defendant's seatbelt was not pulled across the defendant. The record does not preponderate against the trial court's findings. While one cannot easily see inside other cars on the highway in the videos submitted by the defendant, we cannot conclude that it was impossible for Officer Wolfe to see the defendant's seatbelt. The videos do confirm that Andrew Johnson Highway, in the area where the defendant was observed and stopped, was relatively well lit. If we take as true the trial court's finding that Officer Wolfe observed the defendant's seatbelt, then Office Wolfe would have had probable cause to believe that the defendant was in violation of the seatbelt law. We conclude that Officer Wolfe constitutionally stopped the defendant based on probable cause that she was violating the seatbelt law. The trial court did not err in denying the defendant's motion to suppress.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE