# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 15, 2013 Session

## STATE OF TENNESSEE v. OLIVIA KATHLEEN EPPS

**Appeal from the Circuit Court for Rutherford County**
**No. M-67197    David M. Bragg, Judge**

---

**No. M2012-01104-CCA-R3-CD - Filed April 2, 2013**

---

The Defendant, Olivia Kathleen Epps, pleaded guilty to first offense driving under the influence, a Class A misdemeanor. See T.C.A. § 55-1-401 (2010). She was sentenced as a Range I, standard offender to eleven months and twenty-nine days, all suspended but forty-eight hours. The Defendant's plea agreement reserved a certified question of law regarding the legality of the traffic stop that led to her arrest. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and PAUL G. SUMMERS, SR.J., joined.

Mark Christopher Scruggs, Nashville, Tennessee, for the appellant, Olivia Kathleen Epps.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark Bryan Thornton, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Nathan S. Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a traffic stop on May 26, 2011, during which the Defendant was arrested for driving under the influence. After she was indicted, she filed a motion to suppress, alleging that the officer who stopped her lacked reasonable suspicion or probable cause justifying the stop and that the officer's request for a blood test was unsupported by the field sobriety tests.

At the suppression hearing, no witnesses were presented, but the trial court received as exhibits the transcript of the preliminary hearing and the video recording from the officer's car. At the preliminary hearing, Murfreesboro Police Officer Kenneth White testified that

he first saw the front wheels of the Defendant's car stop past the "stop bar" at the intersection of Northwest Broad and West Moore around 2:42 a.m. and that stopping past the bar was "technically running a light." He said that he continued to follow the Defendant, that the Defendant's car crossed the center line twice, and that the car crossed the right fog line twice and onto the shoulder of the road. He said the Defendant's car crossed into the adjacent lane of traffic, which was traveling in the same direction. He said he initiated the traffic stop.

Officer White testified that after he approached the Defendant's car, he asked for her driver's license and that he recalled the Defendant's "fumbling for it." He said that he smelled the odor of an intoxicant coming from the Defendant and that the Defendant had glassy, bloodshot eyes and slurred speech. He said he requested she get out of the car and had her perform a series of field sobriety tests. He said that although the Defendant satisfactorily completed some of the tests, he concluded that she was too impaired to drive. He said that he requested the Defendant to submit to a blood test, that the Defendant agreed to the test, and that the results showed a blood alcohol concentration of 0.18.

On cross-examination, Officer White testified that the video equipment inside his police cruiser activated when he turned on his blue lights, that the recordings included the thirty seconds preceding his turning on his lights, and that the Defendant's driving should have been on the recording. He said he asked the Defendant to complete the one-leg stand test and walk and turn test. He recalled that the ground was flat and that an imaginary line was used during the walk and turn test. He denied the walk and turn test required the use of a real line. He said the Defendant started the walk and turn test too early, missed heel to toe on the first nine steps, missed heel to toe on the second nine steps, stepped off the line twice, and "rolled" her arms on the first nine steps. He said that during the one-leg stand test, the Defendant swayed, raised her arms, hopped on one leg, and placed her foot on the ground prematurely.

The video recording from Officer White's police cruiser shows that it was raining at the time the officer saw the Defendant's car. The recording fails to show the Defendant's stopping past the stop bar and her car crossing the center line twice but shows her car crossing the fog line once.

With regard to the field sobriety tests, the recording skips and is difficult to view before the Defendant leaves her car. The recording shows, though, the Defendant swaying slightly during two field sobriety tests. The recording ends abruptly before the Defendant performed the one-leg stand test and the walk and turn test.

The trial court denied the Defendant's motion to suppress. The court credited Officer White's preliminary hearing testimony that he saw a car stop past the stop bar at an

intersection and that he saw the car cross the center line twice and the fog line twice, causing the officer to initiate a traffic stop. The court credited the officer's testimony, although the video recording did not confirm everything the officer witnessed. The court found that Officer White had reasonable suspicion to stop the Defendant's car based on his observations. The court found that the Defendant "fumbled" when retrieving her driver's license and that the officer smelled alcohol coming from the Defendant. The court found that the Defendant had glassy, bloodshot eyes and slurred speech. The court found that based on the Defendant's performance during the field sobriety tests, the officer had reasonable grounds to request she submit to a blood alcohol concentration test.

At the guilty plea hearing, Officer White testified that he saw the Defendant's car stop past the stop bar at the intersection of Northwest Broad and West Northfield. He said the Defendant's car was not in the middle of the intersection but was stopped past the bar. He said that he followed the Defendant, that the Defendant's car crossed the center line twice and the right fog line twice, and that he initiated a traffic stop.

Officer White testified that although the camera inside his police cruiser began recording thirty seconds before he turned on his blue lights, the Defendant's stopping past the stop bar and some of the weaving were not recorded. He stated that after he stopped the Defendant, she "fumbled" to give him her driver's license, had an odor of alcohol, and had slurred speech. He said the Defendant performed several field sobriety tests. He said she began the alphabet test too soon and swayed. He said the Defendant did "okay" on the alphabet test, the counting test, and the five-finger count test. He said the Defendant began too soon on the walk and turn test, missed heel to toe, stepped off the line, and raised her arms on the first set of steps. He stated that on the one-leg stand test, she swayed on one leg, raised her arms, hopped on one leg, and placed her foot on the ground prematurely. He said that based on her performance on the field sobriety tests, he concluded that the Defendant was too impaired to drive. He arrested the Defendant and requested she submit to a blood test.

On cross-examination, Officer White testified that the preliminary hearing transcript incorrectly stated that he first saw the Defendant on West Moore Street. He said it must have been a typographical error made by the court reporter because no such street existed or intersected with Northwest Broad. He said the front two tires of the Defendant's car stopped past the stop bar and agreed state law required stopping at the bar. He said he had written traffic citations for stopping past the stop bar but could not recall how many.

Officer White testified that the video recording did not show the Defendant's car crossing the center line, although the recording showed her car crossing the fog line. He agreed seventy-five percent of her driving was recorded. He said that although the

Defendant "fumbled" giving him her license, the recording did not show it because she was inside her car. He denied using a line on the roadway during the walk and turn test and said the Defendant used "her imaginary line."

William Epps, the Defendant's father, testified that based upon his measurements, the distance between the intersections of Northwest Broad and West Northfield and Northwest Broad and Thompson Lane was seven-tenths of one mile. He said the recording began at four-tenths of one mile. He said that the recording showed that it took the Defendant about ten seconds to give her driver's license to the officer and that she answered questions while retrieving it. He said the Defendant did not have slurred speech.

On May 4, 2012, the trial court filed an order setting forth that the plea was subject to the following dispositive, certified question of law:

> Whether the stop of the Defendant prior to her arrest on or about May 26, 2011, was based upon a reasonable suspicion that she was engaged in some type of unlawful activity justifying said stop (in violation of Defendant's rights pursuant to the 4th and 14th Amendments to the U.S. Constitution and Article I, Section VII of the Tennessee Constitution) and whether, subsequent to said stop, the officer gathered additional evidence giving him reasonable grounds to request the Defendant submit to [a] blood test to determine whether she was under the influence of any substance as required by T.C.A. § 55-10-406(a)(1).

As a preliminary matter, the Defendant objects to this court's considering Officer White's testimony at the guilty plea hearing. We conclude that our considering the additional testimony of the arresting officer is proper. In reviewing a trial court's ruling on a motion to suppress, this court is permitted to consider evidence presented at the trial and at the suppression hearing. See State v. Williamson, 368 S.W.3d 468, 473 (Tenn. 2012). When a defendant pleads guilty, the guilty plea hearing is the equivalent of the trial. Wlodarz v. State, 361 S.W.3d 490, 503 (Tenn. 2012). We also note that the Defendant did not object to the officer's testifying and presented a favorable defense witness at the guilty plea hearing. This court may consider the officer's testimony at the guilty plea hearing.

The Defendant contends that the trial court erred by denying her motion to suppress because the video recording fails to support Officer White's preliminary hearing testimony and because the video does not show evidence justifying the stop. The State contends that the trial court properly denied the motion to suppress because reasonable suspicion justified the traffic stop. We agree with the State.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts as determined by the trial court is a question of law, which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968)). The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. See Katz v. United States, 389 U.S. 347, 357 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the State establishes that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

An exception to the warrant requirement exists when a police officer conducts an investigatory stop based on a reasonable suspicion that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); Binette, 33 S.W.3d at 218. Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]" Binette, 33 S.W.3d at 218 (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). Reasonable suspicion is determined based upon the totality of the circumstances of the encounter. Id. (citing Alabama v. White, 496 U.S. 325, 330 (1990)). The police may stop a vehicle if they have an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. See Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention. See Whren v. United States, 517 U.S. 806 (1996); State v. Vineyard, 958 S.W.2d 730 (Tenn. 1997).

When a traffic stop is initiated based on reasonable suspicion, a resulting investigation is reviewed under the framework established in Terry v. Ohio. See United States v. Brignoni-Ponce, 422 U.S. 873 (1975). Such investigations require that an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. The detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983); see State v. England, 19 S.W.3d 762, 767-68 (Tenn. 2000). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Royer, 460 U.S. at 500.

We conclude that the evidence does not preponderate against the trial court's conclusion that reasonable suspicion justified the traffic stop. The officer's credited testimony shows that he saw the Defendant's car stop past the stop bar at an intersection, which caught the officer's attention. The officer saw the car cross the center line twice and the fog line twice, causing him to initiate a traffic stop. Although the video recording only shows the car crossing the fog line once, we note that the recording equipment was not activated the entire time the officer followed the Defendant. The officer testified at the guilty plea hearing that the camera only recorded his following the Defendant for about thirty seconds and that it did not record the Defendant's stopping past the stop bar and the weaving. The officer testified that he first saw the Defendant stop past the stop bar when making a right-hand turn. The officer then saw the Defendant cross the center and fog lines. In any event, the trial court credited the officer's testimony that the Defendant's car crossed the center line twice and the fog line twice. See Odom, 928 S.W.2d at 23. Although the recording does not confirm the officer's testimony in its entirety, it does not contradict it.

The Defendant also contends that reasonable grounds did not exist to justify the officer's requesting a blood test and argues that the video recording does not support the officer's testimony. The State responds that reasonable grounds existed. We agree with the State.

Although the video recording provides little evidence about the Defendant's performance on the various field sobriety tests, Officer White testified at the preliminary hearing that the Defendant "fumbled" when retrieving her driver's license and that he smelled alcohol coming from the Defendant. The court found that the Defendant had glassy, bloodshot eyes and slurred speech. The officer testified that during the walk and turn test, the Defendant began the test too early, missed heel to toe on the first nine steps, missed heel to toe on the second nine steps, stepped off the line twice, and "rolled" her arms on the first nine steps. He said that during the one-leg stand test, the Defendant swayed, raised her arms, hopped on one leg, and placed her foot on the ground prematurely. The officer's testimony

is uncontradicted.  We conclude that nothing in the record preponderates against the trial court's finding that the officer had reasonable grounds to request a blood test.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE