IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 22, 2014 Session

**STATE OF TENNESSEE v. STEVEN GREGG BARKER**

**Appeal from the Criminal Court for Bradley County**
**No. 13-CR-258      Amy F. Reedy, Judge**
_____

**No. E2013-02721-CCA-R3-CD-FILED-SEPTEMBER 2, 2014**
_____

Appellant, Steven Gregg Barker, pleaded guilty to 23 counts of the initiation of the process to manufacture methamphetamine and received an eight year sentence, suspended to supervised probation. As a condition of the plea agreement, appellant reserved the right to certify three questions of law challenging the trial court's denial of a motion to suppress. Upon our review of the record and applicable law, we hold that the Defendant is not entitled to relief. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, SP.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, J.J., joined.

Larry Wright, Assistant Public Defender, Cleveland, Tennessee, for the Appellant, Steven Gregg Barker.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General Counsel; Stephen Crump, District Attorney General; and Monte Hatchett, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**

*Facts*

Appellant was indicted by a Bradley County grand jury on July 17, 2013, on 23 counts of the initiation of the process to manufacture methamphetamine, one count of possession of less than .5 grams of methamphetamine with the intent to resell, and one count of tampering with evidence.  Prior to trial, Appellant filed a motion to suppress all evidence discovered as a result of an illegal search and seizure of the Appellant's residence that the state sought to introduce at trial.

Subsequently, the trial court held a hearing on the motion to suppress, at which the following evidence was presented:

Detective Robby Hair of the Bradley County Sheriff's Department testified that on May 15, 2013, he went to the Appellant's residence after being contacted by the Department of Children Services (DCS) regarding a drug-exposed child complaint. His presence was needed as a safety precaution for the DCS worker.

Upon arrival, Detective Hair and the DCS worker were met by a child who was "unclear" as to whether his parents were at home. Detective Hair testified that he felt that someone was inside based upon "the way the child was acting."

During the suppression hearing, Detective Hair identified photographs of the residence's driveway and garage doors as well as other areas around the exterior of the Appellant's residence. The photographs depict that the Appellant's garage is located underneath the residence with its doors facing the driveway. The sidewalk to the front door is parallel to the front side of the Appellant's residence passing directly beside the garage doors, which are located on the east side of the residence. Sitting directly outside the garage door, Detective Hair observed clear tubing, a Mason jar and a white paper bag.[1] Detective Hair testified that in his training and experience such items are indicative of the manufacturing of methamphetamine. He testified that Mason jars are commonly used to mix Coleman fuel with ammonia nitrates and pseudoephedrine. Additionally, clear tubing is used to "gas off" the product after certain stages.

Just around the rear corner of the house by the driveway, Detective Hair observed a few milk crates containing Coleman fuel and cold packs, among other things. Detective Hair testified that these items are also used in the manufacture of methamphetamine. All of these items to the rear of the house could be seen standing in the Appellant's driveway, according to Detective Hair.

---

[1] On cross-examination, the Detective testified that the bag was plastic, which is more consistent with the bag depicted in the photograph exhibits. The search warrant, which was not made an exhibit at the hearing, but was included in the technical record, states that the small bag next to the Mason jar and tubing contained the insides of a lithium battery. There was no testimony at the suppression hearing regarding the contents of the bag.

After viewing these items outside of the Appellant's residence, Detective Hair "secured the house pending a search warrant and also for safety." Upon entering the house, Detective Hair found the Appellant and a female in a back bathroom after knocking and announcing his presence.

On cross-examination, Detective Hair testified that upon arriving at the Appellant's residence, he parked in the driveway beside the sidewalk that goes in front of the house. He testified that the purpose for his being on the property was to make sure the DCS worker was not harmed. After the child said that he did not think his parents were at home, Detective Hair went to check if he could see a parked vehicle in the garage. It was at that time the detective saw what he believed to be methamphetamine manufacturing components just outside the garage door.

Detective Hair testified that he walked about seven more feet to where he could observe the back of the house. He could not go further because of a dog that was located in the Appellant's backyard.

Detective Hair testified that he secured the house because he felt that someone was inside and he did not want evidence to be destroyed while he obtained a search warrant.

Based upon the items that Detective Hair observed outside the residence, he obtained a search warrant.

In its ruling denying the motion to suppress, the trial court stated that Detective Hair was a credible witness who was able to see the tubing and jar from the position where he was have parked. The trial court stated "these items were right outside where someone would drive up and park a vehicle in order to access the front of the house. And the other crate with all sorts of items in it, consistent with the manufacture of methamphetamine, is not anywhere you would have to peer to see either." In its written order denying the Appellant's motion to suppress, the trial court determined that the photographs depicted the location of the various items giving rise to the issuance of the search warrant as being in plain view.

On November 23, 2013, the Appellant pleaded guilty to all 23 counts of initiating the process to manufacture methamphetamine and was sentenced to eight years for

each count, to run concurrently, suspended to supervised probation, and all remaining counts were dismissed.

The Appellant's plea was conditioned upon the reservation of three certified questions of law which were set out in a separate order and incorporated by reference in the judgments. The Order for Tennessee Rules of Criminal Procedure 37 Appeal of Certified Question reflects the following statements of the proposed certified questions of law:

1. Whether Detective Hair while conducting a "safety visit" with a Department of Children's Services investigator left an area where the public is impliedly invited and illegally exceeded the scope of the implied consent by walking from the front door of the house to the garage doors on the side of the house and then walking to the back edge of house and looking around the edge of house into backyard and allegedly seeing evidence of methamphetamine manufacturing?

2. Whether exigent circumstances of destruction of evidence justified law enforcement entering defendant's home without a warrant?

3. Whether the subsequent obtaining of a search warrant using the evidence observed by law enforcement during the search of the side of the home at the garage doors and looking behind the house resulted in a tainted and illegal search warrant rendering any evidence obtained pursuant to said search warrant inadmissible?

Appellant now appeals his convictions based upon these certified questions.

*Analysis*

On appeal, the losing party bears the burden of demonstrating that a trial court's decision concerning a motion to suppress was erroneous. *State v. Harts,* 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). We review a trial court's decision concerning a motion to suppress under the standard established in *State v. Odom,* 928 S.W.2d 18 (Tenn. 1996); s*ee R.D.S. v. State,* 245 S.W.3d 356, 362 (Tenn. 2008). As our Supreme Court explained in *Odom,* with respect to a trial court's factual findings:

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

*Odom,* 928 S.W.2d at 23.

"[I]n evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning,* 975 S.W.2d 290, 299 (Tenn. 1998). "[O]ur review of a trial court's application of law to the facts is conducted under a de novo standard of review."

*R.D.S.,* 245 S.W.3d at 362.

Both the federal and state constitutions contain provisions protecting individuals from unreasonable searches and seizures. *See* U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); Tenn. Const. Art. 1, Sec. 7 ("[T]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures."). A warrantless search or seizure is presumed to be unreasonable—and any resulting evidence may be subject to suppression under the well-known exclusionary rule—unless the State demonstrates that the search or seizure at issue was conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement. *State v. Binette,* 33 S.W.3d 215, 218 (Tenn. 2000). Even evidence that has been discovered and seized by police pursuant to a lawfully-issued warrant may be subject to exclusion if the defendant can establish that this evidence was "the fruit of the poisonous tree"—meaning the direct result of a prior illegal act by police. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Clark,* 844 S.W.2d 597, 600 (Tenn. 1992) ("The exclusionary rule may operate to bar the admissibility of evidence directly or derivatively obtained from an unconstitutional search or seizure."); *State v. Carrie Lynn Ronewicz*, W2011-01332-CCA-R3CD, 2012 WL 6719646 at 16 (Tenn. Crim. App. Dec. 26, 2012).

*Certified Questions*

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, a defendant must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. Rule 37 outlines the following requirements:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. App. 37(b)(2)(A)(i)-(iv).

Our courts have explicitly defined the prerequisites to an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified

question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to [Tennessee Rule of Criminal Procedure] 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

*State v. Bowery,* 189 S.W.3d 240, 245 (Tenn. Crim. App. 2004) (quoting *State v. Preston,* 759 S.W.2d 647, 650 (Tenn.1988)). The *Preston* requirements are mandatory. *Bowery,* 189 S.W.3d at 245–46 (citing *State v. Pendergrass,* 937 S.W.2d 834, 837 (Tenn.1996)). Failure to comply with the requirements results in dismissal of the appeal. *Id.* (citing *Pendergrass,* 937 S.W.2d at 837). *State v. Curtis W. Hammock*, M2013-01382-CCA-R3CD, 2014 WL 3510721 at *5-6 (Tenn. Crim. App. July 15, 2014).

*Questions One and Three*

Questions one and three meet the requirements of *Preston,* and thus require this court's consideration.

Questions one and three raise issues that are similar and can be addressed congruently. The answers to both questions are found by reviewing the photograph exhibits of the residence's exterior, the testimony of Detective Hair, and the findings of the trial court.

One important exception to the warrant requirement is the "plain view" doctrine. As the Tennessee Supreme Court has explained, under the auspices of this doctrine, "[i]t has long been settled that objects which fall in the 'plain view' of an officer, who has the right to be in that position, are subject to seizure." *Armour v. Totty,* 486 S.W.2d 537,

538 (Tenn. 1972). Stated another way, it is "the many times recognized rule that constitutional rights are not violated when a law officer, without any trespass against the defendant, and while he is at a place he has a right to be, looks and sees evidence against a defendant which is plainly visible." *Sneed v. State,* 221 Tenn. 6, 423 S.W.2d 857, 860 (Tenn. 1968). "[T]he plain view doctrine applies when (1) the items seized were in plain view; (2) the viewer had the right to be in the position to view the items; (3) the items seized were inadvertently discovered; and (4) the incriminating nature of the items was immediately apparent." *State v. Cothran,* 115 S.W.3d 513, 524–525 (Tenn. Crim. App. 2003); *see also Totty,* 486 S.W.2d at 537; *State v. Carrie Lynn Ronewicz*, W2011-01332-CCA-R3CD, 2012 WL 6719646 (Tenn. Crim. App. Dec. 26, 2012)

Detective Hair was on the Appellant's property for the lawful purpose of assisting a DCS worker. The pathway used by the Detective and the DCS worker to approach the Appellant's front door was a pathway from the driveway to the front door, offering an implied invitation to the general public to use for the purpose of pursuing legitimate social or business interest with those who reside within the residence. *State v. Harris*, 919 S.W.2d. 619 (1995).

The photographs entered at the suppression hearing clearly show the layout of the front side of the Appellant's exterior residence. The sidewalk used by the detective and the DSC worker passed directly by the driveway pad area outside the garage doors. A mere inadvertent glance to one's left would allow a person to see the items. Once on the driveway pad outside the garage doors, the detective could also easily view the items just around the corner to the rear of the Appellant's residence. The incriminating nature of all the items was immediately apparently to the detective.

We agree with the findings of the trial court that the items observed by Detective Hair were all in plain view and not subject to being suppressed. Additionally, the reference to these viewed items was sufficient basis for probable cause to obtain the search warrant. The resulting search warrant was not tainted or illegal.

*Question Two*

Initially, the State argues that certified question two is not dispositive. We agree. Detective Hair's affidavit in support of the search warrant does not reference anything the officers found in the house when they entered for "exigent circumstances" to secure the house and prevent the destruction of evidence.

The affidavit in support of the search warrant does not include any item found in the Appellant's residence. In fact, other than finding the appellant, a female and the child inside the residence prior to seeking the search warrant, there was no testimony about any items found inside the residence at the suppression hearing. No items found in the home were a basis for the detective's probable cause in seeking the search warrant.

Additionally, the question does not identify what specific evidence found inside the residence the appellant seeks to have suppressed. The information provided in the affidavit supported probable cause for the search warrant to issue regardless of the detective's reasoned basis to secure the residence while seeking the search warrant. This Court is without jurisdiction to consider certified question two because the Appellant has not property reserved a certified question of law that is dispositive under Rule 37.

### *Conclusion*

For the foregoing reasons, we have answered the Appellant's certified questions in a manner which entitles him to no relief. Accordingly, we affirm the judgment of the trial court and the Appellant's convictions.

_____
TIMOTHY L. EASTER, Special Judge