IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 19, 2017 Session

## STATE OF TENNESSEE v. JULIA SANFORD

**Appeal from the Criminal Court for Hamilton County**
**No. 294613     Barry A. Steelman, Judge**

_____

### No. E2017-00236-CCA-R3-CD
_____

The Defendant, Julia Sanford, was indicted for failure to maintain her lane, violation of the financial responsibility law, driving under the influence, and driving under the influence *per se* with a blood alcohol content of .20 or higher. The Defendant filed a pretrial motion to suppress the evidence resulting from the traffic stop of her vehicle. The trial court denied the Defendant's motion, and the Defendant pleaded guilty to driving under the influence and reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) as to whether the stop of the Defendant's vehicle by law enforcement was lawful. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA McGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Lee Davis and Janie Parks Varnell, Chattanooga, Tennessee, for the appellant, Julia Sanford.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; M. Neal Pinkston, District Attorney General; and AnCharlene Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts and Background

This case arises from the stop of the Defendant's vehicle on July 11, 2014, following which the Defendant was arrested for driving under the influence ("DUI"). Before trial, the Defendant filed a motion to suppress, contending that the police officer

who stopped her vehicle did so unlawfully because he did not have reasonable suspicion based on specific and articulable facts to do so. The trial court held a hearing, during which the following evidence was presented: Officer Brian Blumenberg testified that he was employed by the Chattanooga Police Department in July of 2014 and on the DUI Task Force at the time. On July 11, 2014, at approximately 2:00 a.m., Officer Blumenberg was traveling southbound towards downtown Chattanooga on a divided four-lane road when he observed the Defendant's vehicle approaching him in the oncoming northbound lanes. He observed the vehicle "swerve[] over from the fast lane and was partially into the . . . turning lane. . . , [and] continued going straight," following which he turned his police vehicle around and followed the Defendant's vehicle. He noticed the Defendant's vehicle was going "pretty fast" although he did not clock the vehicle's speed. Officer Blumenberg testified that it took him a "substantial amount of time" to catch up to the Defendant's vehicle, which also indicated to him that the Defendant's vehicle was traveling fast. When he caught up to the Defendant's vehicle, he noticed that it was in two lanes of traffic at the same time, the right-hand "turn only" lane and the straight lane. These lanes were separated by a solid white line. At this point the officer activated his blue lights.

The State introduced as an exhibit and played for the trial court the video recording from Officer Blumenberg's dash camera. In the video, the Defendant's oncoming vehicle passes Officer Blumenberg's vehicle at 1:51:12 a.m. Officer Blumenberg turns his vehicle around ten seconds later at 1:51:22 a.m. and does not catch up to the Defendant's vehicle until 1:52:40 a.m. It is not clear in the video if the Defendant's vehicle swerved over a lane-dividing line or crossed over into another lane. In court, Officer Blumenberg indicated on the video where the Defendant's vehicle, while traveling towards him, crossed over the line dividing the "fast" lane and the "turning" lane.

On cross-examination, Officer Blumenberg again identified where in the video recording the Defendant's vehicle crossed over into the turning lane while she was traveling straight. He stated that she did this as she came around a curve in the road, which he clarified meant that she was driving "wide in the curve" and not maintaining her lane of travel. He agreed that the Defendant was not cited for speeding.

The trial court denied the Defendant's motion to suppress, making the following statements:

> I think it's difficult to determine, for the Court to determine, and I think that was evidenced even in the hearing as the parties attempted to roll and then rewind the video related to where the [Defendant's] motor vehicle

2

was located.

The witness who is in the best position to testify where the [Defendant's] motor vehicle was located is Officer Blumenberg. I do find that his testimony about where the [D]efendant's vehicle was located is credible. He was on the roadway that night, was able to personally observe the location of the vehicle.

His testimony was that her vehicle was halfway in the turning lane and halfway in the fast lane. The video doesn't illustrate that to the Court; yet, it also does not contradict that. The Court really isn't able to tell from the video where the vehicle was located.

. . . .

[T]he totality of the circumstances is that the officer testified that at two o'clock in the morning, that he observed a motor vehicle coming from the other direction and that half of that vehicle was in one lane and half of it was in another lane, and to the officer, he believed, developed a reasonable suspicion that, based on that observation, that the [D]efendant had violated [T.C.A. § 55-8-123(1)]; and therefore, based on that suspicion, the Court finds he was appropriate in making the stop to investigate further.

The trial court denied the Defendant's motion to suppress. Thereafter, the Defendant offered a plea of guilty to DUI, and the other charges were dismissed. The trial court entered the plea and sentenced the Defendant to eleven months and twenty-nine days to be suspended after serving forty-eight hours of incarceration. The Defendant reserved for appeal the following certified question of law:[1]

whether the trial court erred in finding that CPD [Officer] Blumenburg had reasonable suspicion to stop [the Defendant's] vehicle and overrule the [Defendant's] motion to suppress the stop.

Both parties agree that the certified question of law is dispositive of the case.

## II. Analysis

---

[1] The State contends, and we agree, that the different version in the Defendant's appellate brief of her certified question of law was not memorialized in a judgment of conviction or order as required by Tennessee Rule of Criminal Procedure 37(b)(2)(A). As such, we will review the certified question as it is listed on the judgment of conviction.

3

## A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this Court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This Court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This Court must make an independent determination that the certified question is dispositive. *Id.* at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)). Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a defendant may appeal from any judgment or conviction occurring as the result of a guilty plea. *State v. Long* 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). The following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

(i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;

(ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and

(iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In *Preston*, our supreme court stated its intention to "make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv)." 759 S.W.2d at 650. Failure to properly reserve a certified question

4

of law pursuant to the requirements stated in *Preston* will result in the dismissal of the appeal. *Woodlee*, 2010 WL 27883, at *2 (citing *State v. Pendergrass*, 937 S.W.2d 848, 838 (Tenn. 1996)). The importance of complying with the *Preston* requirements has been reiterated by our supreme court in *State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003), which stated that the *Preston* requirements are "explicit and unambiguous," in rejecting the defendant's argument in favor of substantial compliance with Tennessee Rules of Criminal Procedure 37. *Id.* at 912.

In the case under submission, the Defendant's issue on appeal meets these requirements: she pleaded guilty; the judgment form referenced the certified question; and the question included on the judgment form is stated so as to identify clearly the scope and limits of the legal issue reserved and is dispositive of the case. The parties agreed that the question was dispositive of the case. Thus, we conclude that the issue is properly before this Court.

### B. Legality of Traffic Stop

The Defendant contends that Officer Blumenburg unlawfully stopped her because he lacked reasonable suspicion based on specific and articulable facts to stop her vehicle. She contends that the officer's testimony and the State's argument at the suppression hearing demonstrate a misunderstanding and/or misapplication of the traffic law at hand, Tennessee Code Annotated section 55-8-123(1), which states:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this section, shall apply:
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety;

The Defendant points us to *State v. Smith*, 484 S.W.3d 393 (Tenn. 2017), for guidance on the proper reading and application of the traffic statute, and argues that the State has not proven that it was practicable for her to maintain her lane. The State responds that this case is virtually the same set of circumstances as those in *Smith* and that the proof presented at the hearing was that the Defendant did not maintain her lane when it was practicable to do so, providing reasonable suspicion for the traffic stop.

When this Court reviews a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier

of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. *See id*. However, the application of the law to the facts found by the trial court is a question of law and is reviewed de novo. *Walton*, 41 S.W.3d at 81; *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968)). The analysis of any warrantless search must begin with the proposition that such searches, and resulting seizures, are per se unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Tyler*, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the State establishes that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

An exception to the warrant requirement exists when a police officer conducts an investigatory traffic stop based on a reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218. In *State v. Davis*, our supreme court reiterated the standard for determining reasonable suspicion. Noting that reasonable suspicion is a lower standard than that for determining the existence of probable cause, the Court stated:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

354 S.W.3d 718, 727 (Tenn. 2011). The *Davis* court went on to say that:

6

[A] trial court's determination of whether a police officer's reasonable suspicion is supported by specific and articulable facts is an objective, fact-intensive inquiry. It requires the court to consider the totality of the circumstances established by the proof. These circumstances include, but are "not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders."

*Id.* (citations omitted).

Our supreme court addressed the reasonable suspicion standard in light of the traffic lane statute at issue in the present case, stating that section 55-8-123(1) "is not a strict liability offense," rather it

contains two contingencies that impact whether crossing over a fog (or other lane) line is an offense. First, a motorist is required to remain in a single lane only so far as it is 'practicable' to do so. . . . Second, if remaining in a single lane becomes impracticable, the driver may leave her lane of travel only after first ascertaining that the movement can be made safely.

*Smith*, 484 S.W.3d at 404 (footnote omitted). The court went on to hold that section 123(1) was violated when "a motorist strays outside of her lane of travel when either (1) it is practicable for her to remain in her lane of travel or (2) she fails to first ascertain that the maneuver can be made with safety." *Id.* "[E]ven minor lane excursions may establish a violation of section 123(1) whether or not the excursion creates a specific, observed danger." *Id.* Lastly, the court stated:

when an officer observes a motorist crossing a clearly marked fog line, the totality of the circumstances may provide a reasonable suspicion sufficient to initiate a traffic stop to investigate the possible violation of Section 123(1). If the officer observes circumstances rendering it practicable for the motorist to remain in her lane of travel, that observation will weigh in favor of reasonable suspicion. Similarly, if the officer observes that the motorist's crossing of the fog line in some specific regard was unsafe, indicating that the driver failed to first ascertain the safety of the lane excursion, that observation will weigh in favor of reasonable suspicion. In all events, however, a trial court considering the legality of a stop made pursuant to Section 123(1) must consider all of the relevant circumstances in deciding whether the motorist's lane excursion gave the officer a

7

constitutionally sufficient basis to at least suspect that the motorist was violating Section 123(1).

*Id.* at 411.

The evidence presented at the suppression hearing was Officer Blumenberg's testimony and the video recording from his police car. The trial court stated that it was considering the totality of the circumstances and the evidence presented and found that Officer Blumenburg's testimony was credible. The trial court noted that the video recording was not clear as to whether the Defendant's car crossed into the turning lane as she rounded a curve on the roadway because of the low light and lack of clarity on the video recording. However, the trial court stated that Officer Blumenberg was in the best position to judge whether she did so, based on the fact that he was present at the scene and could identify when the infraction occurred. During his testimony, Officer Blumenberg indicated on the video recording where the Defendant crossed over the line into the turning lane. He stated that he followed the Defendant's vehicle, which he deduced to be speeding based on how long it took him to catch up to her vehicle after the Defendant passed him. He then observed her vehicle cross the dividing line as she made a right turn before he effectuated a stop of her vehicle.

We conclude that the evidence does not preponderate against the trial court's findings. It is not entirely clear on the video recording whether the Defendant's vehicle crossed over the lane-dividing line. Officer Blumenburg, whose testimony the trial court credited, specifically identified in the video recording where he determined a traffic violation had occurred. Nothing in the video contradicts his observation or testimony. In our view, the video recording also corroborated his testimony that the Defendant was speeding and later crossed a lane-dividing line with her vehicle. Our supreme court noted in *State v. Brotherton* that the "articulable and reasonable suspicion" of a police officer that a traffic violation has occurred is the proper inquiry into the legality of the stop, not whether in fact a violation has occurred. 323 S.W.3d 866, 871 (Tenn. 2010). The trial court did not err when it clearly considered the *Smith* factors and determined that, based on the totality of the circumstances, the Defendant's observed infraction of crossing over into the turning lane as she proceeded around the bend in the road provided Officer Blumenburg with the reasonable suspicion necessary to stop the Defendant's vehicle. Accordingly, we affirm the trial court's judgment denying the Defendant's motion to suppress and therefore, we affirm the judgment of conviction.

## III. Conclusion

After a thorough review of the evidence and relevant authorities, we conclude that the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE

9